**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**BOBBIE MOORE**                                                                                   **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO.: 4:23-CV-00059-MPM-JMV**

**NORTH BOLIVAR CONSOLIDATED SCHOOL DISTRICT**           **DEFENDANT**

**ORDER**

This cause comes before the court on the motion of defendant North Bolivar Consolidated School District ("the school district") for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Bobbie Moore has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

This is an age and sex discrimination case, based on the ADEA and Title VII, arising out of defendant's April 7, 2022 decision not to renew plaintiff in her position as the Director of the school district's Alternative School and its failure to hire her for a similar position it later created. [See Complaint at ¶ 5-6]. In her complaint, plaintiff alleges that:

> After non-renewing Plaintiff, Defendant made postings for new positions, including a position which would have been substantially the same as Plaintiff's position. Specifically, Defendant posted a position having the title of Assistant Principal/Alternative School Director. Plaintiff had previously been the Alternative School Director, and would have been the natural person to fill the position of Assistant Principal/Alternative School District. Accordingly, Plaintiff began to prepare her application papers to apply for this position. In the process of preparing her paperwork, Plaintiff learned she would be required to submit a transcript of her grades, even though she had been employed by Defendant for thirty (30) years. Plaintiff talked with a lead teacher about this requirement, and the lead teacher informed Plaintiff that she understood that the position had already been filled. Plaintiff then called her Principal who confirmed the information given to Plaintiff, that the position of Assistant Principal/Alternative School Director had already been filled. Thus, there was no need for Plaintiff to apply for the position."

[Complaint Doc. 1 at ¶¶ 7-8]. Plaintiff alleges she then learned from an undisclosed source "that the person who filled the position was a young male." (Complaint Doc. 1 at ¶9). Plaintiff further alleges that "[t]here is no reason [she] should have been displaced for the position and replaced with a young male, except for her age (sixty-two (62) at that time), and her gender, female." (Complaint Doc. 1 at ¶10). With these basic facts in mind, this court now turns to defendant's motion for summary judgment.

## LAW

FRCP 56(a) requires that a court grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. at 324. In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). Rather, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Title VII prohibits an employer from discharging an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The ADEA

prohibits similar treatment on the basis of age. 29 U.S.C. § 623(a)(1). Under both statutes, the same burdens of production and proof apply to discrimination claims. *Meinecke v. H & R Block,* 66 F.3d 77, 83 (5th Cir.1995) (per curiam). Employment discrimination claims under the ADEA and Title VII "typically rely on circumstantial evidence that is evaluated under the burden-shifting framework first articulated in *McDonnell Douglas*." *Goudeau v. National Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). To establish a prima facie case of discrimination, Plaintiff must establish that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group. *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016).

In a reduction in force case, courts apply a modified fourth element for a prima facie case of discrimination, used in cases "[w]hen the employer does not plan to replace the discharged plaintiff." *Bauer*, 169 F.3d at 966. In such cases, the fourth element is modified and the plaintiff must prove that "others who were not members of the protected class remained in similar positions" or that she was "otherwise discharged because of [her] age." *Bauer*, 169 F.3d at 966. Stated a differently, Plaintiff can show "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Amburgey v. Corhart Refractories Corp. Inc.*, 936 F.2d 805, 812 (5th Cir. 1991)). Once a plaintiff makes a prima facie showing of discrimination, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *Goudeau*, 793 F.3d at 476. If the defendant meets this burden, the burden shifts back to the plaintiff to show the proffered reason was a pretext for discrimination. *Goudeau*, 793 F.3d at 476.

## ANALYSIS

Defendant previously filed a Rule 12 motion to dismiss in this case, and, in denying that motion, this court noted plaintiff's advanced age and the fact that she had worked for the school district for thirty years. [Slip op. at 3]. This court further wrote that:

> While this court certainly does not believe that these facts, standing alone, are sufficient to establish fact issues regarding a claim for age discrimination, they do cause it to want to know more about the circumstances surrounding plaintiff's non-renewal and how the new position, which plaintiff claims was substantially identical to her old one, came to be created and filled. Indeed, this court can envision some cases in which an employer who wishes to "get rid of" a particular employee might seek to create a new position which is more or less identical to the employee's old one and fill it before she even knew to apply for it. This court can further imagine some cases in which the circumstances surrounding the creating and filling of such a position are sufficiently suspicious to help support a finding of pretext and/or improper motive. This court is certainly not saying that this is the case here, but it does believe that plaintiff's lengthy tenure at the school district militates in favor of allowing her to conduct discovery in this regard.

[*Id.* at 3]. In presently moving for summary judgment, defendant relies upon discovery which, among other things, provides additional information regarding the reduction in force which took place in the case, and it claims that it was the educational needs of the district, and not any desire to get rid of plaintiff, which motivated that restructuring of positions.[1]

While this court's impression is that defendant has potentially strong arguments that a system-wide restructuring did take place in the school district, it seems clear that, in its motion to dismiss and in its current motion for summary judgment, defendant has relied heavily upon what it characterizes as plaintiff's failure to apply for the new assistant principal position which was created in that restructuring. As discussed below, however, this court believes that the evidence

---

[1] Defendant also argues that plaintiff failed to adequately exhaust her administrative remedies before the EEOC, but this court finds this argument to not be well taken, for essentially the reasons stated in plaintiff's briefing.

4

regarding whether this case involves a simple failure to apply for the new position by plaintiff is far less clear than defendant suggests.

This court notes that defendant's position that plaintiff simply failed to apply for the new position was arguably made necessary by the fact that, as a highly experienced and well-regarded employee of the school district, her qualifications for the new assistant principal position do not appear to be in question. Indeed, J.W. Robinson, the principal of the high school where the assistant principal position was available, testified in his deposition that he thought very highly of plaintiff and that he "would have been thrilled if she would have wanted to be my assistant principal." [Brief at 7]. Specifically, Robinson testified that:

> Q Did Ms. Moore apply for the assistant principal position?
> A No.
> Q Had Ms. Moore applied for the assistant principal position, would you have interviewed her?
> A Yes, indeed!
> Q And why do you say that, Mr. Robinson?
> A Basically, because I admire her. When I first got into the district, she like took me under her wing and showed me some things that I had never seen or never -- uh -- I didn't learn in college. So it was like hands-on experience with me.· And she didn't hesitate to answer any questions that I had. She would stay overnight late to help me with anything that we had to do for the district. So I would have been thrilled if she would have wanted to be my assistant principal.

[Robinson Deposition p. 22, lines 2-18].

Given Principal Robinson's enthusiastic endorsement of plaintiff's qualifications for the assistant principal position, it seems clear that defendant's factual position in this case rests heavily upon its contention that she failed to apply for it. In its reply brief, defendant provides the following excerpt from plaintiff's deposition, in support of its arguments in this regard:

> Q When you received the organizational chart, did you understand that there would be new positions available that could be applied for?
> A Yes.
> Q Did you have your eye on any particular position?
> A Yes. Assistant Principal/Alternative Director.

5

> Q What steps did you take to begin applying for that position?
> A I looked on the website, I called the new HR person which was Ms. Rimmer and asked her the steps to put in for that position. She told me the steps and also said it would be best if I just wait until we put the other positions on. I went on and started the application anyway. The application calls for your transcript. I called and texted people and got letters of recommendation, I uploaded those letters of recommendation with the partial application. I was waiting on my transcript. In the process of waiting on my transcript, I heard the position had been filled.
> Q Did you ever hit the submit button to submit an application or did the process allow you to save your work as you went along?
> A The process allowed you to save your work as you go along. You could come back and edit the application.
> Q But you had not hit the submit button?
> A No.

[Reply brief at 3-4, citing Doc. 38-8 at p. 21, 22).

This court discusses plaintiff's version of events in greater detail below, but it notes that, in her deposition, she did not specifically recall the dates involved in her application process. It appears to be undisputed, however, that Superintendent Smith sent plaintiff a non-renewal letter on April 7, 2022, stating that the reason she was being non-renewed was a reduction in force and the elimination of her current position. [See April 7, 2022 Letter, Exhibit "C"]. Moreover, School Board minutes show that the recommendation of Ben Baltimore as Assistant Principal was not accepted until April 25, 2022. [See Board Minutes attached as Exhibit "G" and Contract attached as Exhibit "F"]. Based on this evidence, defendant argues in its brief that:

> The Board did not make this hire until April 25, 2022, more than two weeks after Plaintiff Moore was non-renewed and invited to apply for open positions. Under both state law and pursuant to Ms. Moore's understanding of the educational hiring process (which she has been a part of for 30 years) unless and until the Superintendent recommends someone for the position of principal and the Board approves a hire, the position remains "open."  Additionally, as stated hereinabove, the Plaintiff does not allege that any member of the Board of Trustees or the Superintendent told the Plaintiff the position was "filled" and Plaintiff produces no proof through the Board minutes of same.

[Brief at 15-16].

Defendant appears to be correct that the time period from April 7 to April 25 is a crucial one in this case, and it might well have a winning summary judgment argument that plaintiff simply "dropped the ball" in failing to apply for the position during this window of opportunity, were there not additional facts in the record suggesting otherwise. In her brief, plaintiff does not appear to dispute defendant's characterization of the Board's actions, but she insists that she was given repeated indications by school employees that the assistant principal position had already been filled. Specifically, plaintiff testified that:

> Q: So you said that you heard that the position had been filled?
> A: Yes, ma'am.
> Q: All right, so let's talk about that. Who told you that this position had been filled?
> A: Initially, it was the lead teacher at the high school that said that she heard that the position had been filled.
> Q: And who is that?
> A: Stephanie Thomas.

[Moore depo. at 22]. Aside from this alleged statement by Thomas, a fellow teacher, plaintiff testified that she was told by Principal Robinson that the assistant principal position had already been filled:

> Q: Okay. And so after you learned this information from Ms. Thomas, did you make any other inquiry about the position being open or closed, that you were interested in?
> A: Yes, ma'am.
> Q: And what other inquiry did you make?
> A: I called the principal at the time, Mr. Robinson.  * * *
> Q: And what was your conversation with Mr. Robinson?
> A: My conversation with Mr. Robinson actually was one of them that gave me the recommendation, so he knew I was putting in an application. And so when I heard, I called him, and I said, "Mr. Robinson, I'm asking, I'm actually in the process of putting the application in for the assistant principal, and I heard that it had been filled. Has it been filled?" And his answer was "yes."

[Id. at 24-25].

Plaintiff's conversations with Principal Robinson strike this court as being far more significant than those with a fellow teacher, given that a principal would clearly seem to be in a

position to have accurate information regarding the status of an assistant principal opening at his school. It thus strikes this court as quite significant that plaintiff was unequivocal in testifying that Robinson told her that the assistant principal position had been filled. By contrast, Robinson was far less precise in his own deposition testimony on this point, stating that:

> Do you ever remember receiving a phone call from Ms. Moore asking about the vacancy as the assistant principal?
> A: I don't recall. I don't remember. I don't remember. I don't. Me and Ms. Moore talked a lot, and so I don't really remember that, specifically.
> Q: Okay. And so you don't remember talking to her about her applying for that job?
> A: I don't.

[Robinson depo. at 20]. This testimony speaks for itself, and this court believes that, quite apart from the deferential standard of review on summary judgment, jurors may well conclude that plaintiff has much stronger evidence on this point than defendant.

In its briefing, defendant attempts to minimize the significance of Principal Robinson's alleged statement to plaintiff, writing that:

> Plaintiff also admits no member of the Board of Trustees nor the Superintendent told the Plaintiff the position was "filled." In fact, Plaintiff places the whole blame of her understanding the position was "filled" on the shoulders of Principal Robinson, but she offers no proof that Robinson was motivated to tell her the position was filled due to discriminatory intent.

[Defendant's brief at 9]. In so arguing, defendant does not appear to dispute that Robinson made the statement attributed to him by plaintiff, or, at the very least, it appears to tacitly acknowledge that plaintiff's testimony creates fact issues in this regard. Regardless of whether defendant does, in fact, acknowledge the existence of fact issues in this regard, this court believes that they clearly do exist based on plaintiff's testimony and Robinson's professed lack of recollection of the relevant events.

Moreover, this court disagrees with defendant's suggestion that, to survive summary judgment, it is incumbent upon plaintiff to produce specific evidence of Robinson's

8

discriminatory intent, above and beyond the simple fact that, she contends, he gave her false information about the status of the assistant principal opening. In the court's view, the providing of false information by an individual who would clearly seem to have the correct information at his disposal raises fact issues regarding what that person's motivations might have been in doing so. Without question, jurors are best suited to evaluate the motivations of individuals in situations such as these, and this court believes that they should have the opportunity to consider Robinson's testimony on these issues at trial. Principal Robinson aside, this court reiterates that plaintiff testified that, when she expressed interest in applying for the assistant principal position, the new HR representative Ms. Rimmer told her that "it would be best if I just wait until we put the other positions on" but that she decided to "start[] the application anyway." [Depo. at 21].

    It strikes this court that advice to "wait" to apply for a position set to be filled very soon is poor advice indeed, and jurors may wonder what motivated Rimmer to counsel plaintiff to do so. In the court's view, jurors could reasonably conclude that the alleged actions and statements of Principal Robinson and Rimmer, considered together, are consistent with those of an employer who did not want plaintiff to apply for the assistant principal position and sought to discourage and/or mislead her into not doing so. This court further believes that plaintiff's evidence in this regard is sufficient to create fact issues regarding defendant's basic credibility in this case and regarding its assertion that it followed an open and honest hiring process for the assistant principal position, for which plaintiff simply failed to apply. This factual assertion on defendant's part is, once again, a central basis for its summary judgment motion in this case, and this court is not prepared to dismiss this action before trial when the accuracy of this assertion is very much in question.

In making the above observations, this court emphasizes that, if the facts demonstrate that defendant's own bad faith and/or dishonest conduct was the proximate cause behind plaintiff's failure to complete her application for the assistant principal position, then it would clearly be contrary to the policy consideration undergirding federal employment discrimination laws to allow defendant to use that failure as a defense to an employment discrimination claim. Indeed, such a defense seems uncomfortably close to a "we taped your mouth shut and you didn't say anything" defense, and this court can discern no good reason why it should allow such a defense to prevail in this case. This court is accordingly inclined to instruct jurors something to the effect that any decision by defendant, through its employees, to discourage or mislead plaintiff into not applying for the position based on unlawful discrimination may not serve as the basis for a defense to a failure to hire claim, if such was the proximate cause of her failure to apply for the position. This court further believes that the above-cited evidence is more than sufficient to create fact issues regarding whether defendant's bad faith and/or dishonest conduct was, in fact, the proximate cause of plaintiff's failure to apply for the assistant principal opening.

In arguing otherwise, defendant takes plaintiff to task for relying upon Principal Robinson's assertions regarding the status of the position, when, it claims, an experienced educator such as herself should have known that "unless and until the Superintendent recommends someone for the position … and the Board approves a hire, the position remains 'open'." [Brief at 15]. For its part, however, this court believes that these words apply with even greater force to Principal Robinson and HR Director Rimmer than they do to plaintiff. Indeed, it strikes this court that Robinson in particular was in a position to know that the assistant principal position had not, in fact, been filled when, plaintiff contends, he told her that it had been. Thus, while any failure by plaintiff to adequately research the status of the job opening could at least be

argued to constitute negligence on her part,[2] any affirmatively incorrect statements by Robinson in this regard raise the specter of something more sinister than simple negligence, such as unlawful discrimination.

This court further believes that the fact that Robinson offers nothing more than a rather weak "I don't remember" response to plaintiff's assertion that he provided her with false information regarding the status of the assistant principal position does not lend itself to confidence in his assurances that he would have been "thrilled" to see her apply for it. In short, this court believes that plaintiff's evidence in this case, if found credible by a jury, supports a finding that defendant's "we would have loved to see her apply but she didn't" defense in this case is pretextual within the meaning of the *McDonnell Douglas* framework, and that "something else" transpired in this case other than the open and transparent hiring process which defendant claims took place. This court would hasten to add that this "something else" need not necessarily be unlawful discrimination, since there are other plausible scenarios as well. It seems possible, for example, that Principal Robinson honestly believed that Baltimore was a "slam dunk" candidate for the assistant principal position based on his competence and experience and that he was, indeed, a superior candidate for the job than plaintiff, based solely on merit. Under this factual scenario, it seems possible that Robinson would have wished to discourage plaintiff from applying for the position in order to spare the school district the discomfort of having to reject the application of a well-regarded and popular educator such as her.

While this court thus concludes that there are potential non-discriminatory explanations for Principal Robinson's alleged dishonesty in this case, it regards it as entirely plausible that he

---

[2] This court notes that it is far from clear to it that plaintiff was even negligent in this regard, since the word of the principal of a school that a particular position at that school has been filled would appear to be something upon which an applicant could reasonably rely.

believed that, at age 62, plaintiff's "best years were behind her" and that, as such, it would be wise to hire a younger candidate such as Baltimore. In so stating, this court observes that there was a very considerable age difference between plaintiff and the 42 year-old Baltimore, and 62 is an age at which, it seems clear, doubts regarding the continued competence of an employee tend to become more prevalent.

Having said that, this court believes that plaintiff's Title VII sex discrimination allegations are much less compelling in this case than her allegations of age discrimination. In so stating, this court notes that plaintiff's contention is that the assistant principal position was essentially the same position as the one she had already been performing, and, to state the obvious, she was no more or less a female during the relevant events of this case than when she was first hired for the position. Plaintiff had, however, gotten older since she was first hired for that position, and this court believes that this fact renders her age discrimination claims considerably stronger than her Title VII claims. In its order denying defendant's motion to dismiss, this court noted the weakness of plaintiff's proof of sex discrimination, writing that:

> This court notes for the record that the basic facts of this case appear much less suggestive of sex discrimination than age discrimination. In so stating, this court makes the rather obvious observation that defendant was well aware that plaintiff was a female when it hired her and retained her as an employee for over thirty years. This court therefore believes that, if plaintiff is unable to develop proof of sex discrimination during discovery, she would be well advised to consider dropping her sex discrimination claim. In so stating, this court notes its belief that, quite often, "more is less" when it comes to discrimination claims, since multiple claims frequently end up competing with each other for limited causation oxygen and thereby weaken the plaintiff's entire case.

[Slip op. at 3-4, fn. 1].

This court thus recommended that plaintiff drop her sex discrimination claim if she failed to develop evidence in support of it during discovery. Plaintiff's summary judgment brief provides no indication that she did develop such proof in discovery; indeed, she provides very little discussion of her sex discrimination claim at all. This court believes that, if there were any

doubt in this regard, the *coup de grace* for plaintiff's sex discrimination claim is defendant's proof, noted in its brief, that females were very heavily represented in the restructuring which took place in the school district. [Brief at 9-10]. Plaintiff offers no response to this evidence in her brief, and the record strongly suggests that sex was not the reason for any employment decisions in this case. Plaintiff's Title VII sex discrimination claim will therefore be dismissed.

This dismissal aside, this court concludes that it should wait until after the presentation of the evidence at trial to decide exactly what legal standards apply to plaintiff's remaining age discrimination claim in this case. While plaintiff has clarified in her response that she is not asserting a "failure to promote" claim, the parties disagree whether or not this case should be addressed under the standards applicable to reduction in force cases. The parties spend a considerable amount of time addressing this issue in their briefing, but this court notes that it appears to relate largely to the specific form of *McDonnell Douglas* instruction which applies in this case. The *McDonnell Douglas* framework is, of course, a tool to assist judges in analyzing employment discrimination cases on summary judgment or directed verdict, but this framework will not form the basis of any jury instructions in this case. Indeed, the Fifth Circuit model instructions make it clear that:

> The *McDonnell Douglas* burden-shifting framework "is applicable only in a directed verdict or summary judgment situation," and does not apply in a trial on the merits. *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 575 (5th Cir. 2004)(*quoting Powell v. Rockwell Int'l Corp.,* 788 F.2d 279, 285 (5th Cir. 1986)).

[Fifth Circuit model instruction 11.1 at 132-33.] This court's practice is to rely upon Fifth Circuit model instructions at trial, wherever they are applicable, and it requests that the parties base their proposed jury instructions upon these model instructions, unless they believe them to be inapplicable for some reason.

13

For the purposes of this court's own rulings on summary judgment or directed verdict, it does not regard it as material whether this case is properly labeled a reduction in force case or not, since the crucial issue is simply whether defendant intentionally discriminated against plaintiff on the basis of her age. In this vein, defendant contends that it reduced the number of school positions in question from six to five and that it created an entirely new position of assistant principal, for which plaintiff simply failed to apply. Plaintiff, by contrast, maintains that the assistant principal position was essentially the same as the one she had previously occupied and that defendant deliberately took steps to discourage and/or mislead her into not applying for it, based on unlawful discrimination. In other words, plaintiff contends that there was not a genuine reduction in force in this case but, rather, a sham process by which defendant repackaged her old job under a new title and took steps to prevent her from applying for it.

For its part, this court believes that the crucial issue is not whether the assistant principal position was the exact same job as the one plaintiff previously occupied, but, instead, whether defendant deliberately deprived plaintiff of her old job based on age discrimination and/or whether it prevented her from obtaining the new assistant principal position based on age discrimination. As quoted above, Principal Robinson made it clear that he regarded plaintiff as fully qualified for the assistant principal position and that the only thing preventing her from applying for it was her own inaction. Once again, however, plaintiff contends that Rimmer encouraged her to wait to apply for the position (even though it was set to be filled very soon) and that Robinson himself gave her false information regarding the status of the opening. This court believes that, if a jury finds plaintiff's testimony in this regard to be accurate, then it could reasonably look with skepticism upon defendant's characterization of the alleged reduction in force in this case and conclude that it was instead a cover for age discrimination.

This court further believes that, in seeking to establish pretext, plaintiff has very substantial arguments that she was better qualified for the assistant principal position than Baltimore. Specifically, plaintiff argues in her brief that:

> Plaintiff has been employed in public education for thirty years. Moreover, Plaintiff has a Master's Degree in Administration. She has worked in numerous roles, including as a teacher, principal, curriculum coordinator, and alternative school director. Her experience is extensive such that no reasonable person could believe that her replacement, Baltimore, is more qualified. Baltimore does not have an advanced degree and had never served in an administrative role within a school district before receiving his position with Defendant. Baltimore's only experience was ten years as a school room teacher and four years as a truck driver.

[Plaintiff's brief at 11 (record citations omitted)]. In its reply brief, defendant appears to recognize that plaintiff's qualifications were superior to Baltimore's, and, apparently as a result, it falls back once again on its failure to apply defense. Specifically, defendant writes in its reply brief that:

> More importantly, Moore's qualifications were not considered - and cannot be analyzed under a pre-text analysis - because she failed to apply for the position. It is axiomatic that a comparison of qualifications by a decision-maker can only be scrutinized if there was an actual comparison by the decision-maker to begin with. Again, Moore did not throw her hat in the ring for this assistant principal position and so she cannot complain now on the sidelines.

[Reply brief at 11]. This court has already discussed its reasons for concluding that plaintiff's alleged failure to apply does not constitute a proper basis for summary judgment in this case, and it will not repeat this discussion here.

This court's conclusion that triable jury issues exist regarding plaintiff's age discrimination claim is strengthened by the manner in which defendant apparently seeks to distance itself from its own principal, most notably by emphasizing that "no member of the Board of Trustees nor the Superintendent told the plaintiff the position was 'filled.'" [Defendant's brief at 9]. The principal of the school in question strikes this court as being a very

high-level employee for defendant to distance itself from, and it concludes that, at the very least, fact issues exist regarding whether any dishonesty shown by Robinson regarding the opening should be regarded by jurors as evidence of an institutional intent by the school district to discriminate against plaintiff. This court further disagrees with defendant's argument that plaintiff "offers no proof that Robinson was motivated to tell her the position was filled due to discriminatory intent." *Id.* at 9.

While plaintiff may lack *direct* proof of discriminatory intent on the part of defendant in this case, it is well established that, in asserting a circumstantial case of discrimination under *McDonnell Douglas*, it is sufficient for the plaintiff to demonstrate that the defendant's version of events is unworthy of credence and that it should thus be regarded as pretextual. In the court's view, jurors could reasonably conclude that such is the case with Principal Robinson's assurances that he would have been "thrilled" to see plaintiff apply for the position, given her testimony that he provided her with false information regarding the status of the opening. In this vein, this court observes that proof of a defendant's basic lack of honesty regarding a hiring decision tends to itself constitute proof of pretext, since jurors may reasonably conclude that an individual who was dishonest regarding one important matter should not be trusted regarding other important matters. Jurors may further conclude that Robinson would have had no reason to lie about the status of the assistant principal opening if, as he contends, he would have been very happy to see plaintiff apply for it. Assuming jurors do conclude that Robinson's version of events is pretextual, this court believes that it is for them to decide 1) whether his dishonesty was a cover for unlawful discrimination or something more benign and 2) the extent to which, as principal of the school where the assistant principal position was available, Robinson's statements should be imputed to the school district in this case.

For its part, it is difficult for this court to believe that the opinions and desires of a school's principal would not, at the very least, carry significant weight in informing the superintendent's recommendation and the school board's decision regarding the hiring of an assistant principal at that principal's school. Moreover, allowing a school district to have principals or other administrators discourage or mislead applicants from applying for positions, and then seeking to wash their hands of those actions after the fact merely because they were not made by the school board itself, would clearly make it easier for discrimination to occur. This court believes that these considerations weigh heavily in this case, regardless of what labels are used to describe plaintiff's age discrimination claim.

While this court will thus not seek to definitively characterize plaintiff's age discrimination claim at this time, its present inclination is to conclude that, if defendant purported to "eliminate" plaintiff's position under the guise of a reduction in force, only to revive it in substantially identical form under another job title, then this might potentially serve as the starting point for a wrongful termination claim. Alternatively, if the evidence supports a conclusion that defendant did, in fact, create a legitimately new assistant principal position after eliminating plaintiff's old position, then this might serve as the starting point for a failure to hire claim. Both scenarios are merely the starting point for a claim, however, and the crucial point with regard to each is whether plaintiff is able to prove, either directly or circumstantially, that unlawful discrimination motivated defendant's alleged decision, acting through employees such as Robinson and Rimmer, to discourage and/or mislead plaintiff into not applying for the new position.

This court is quite confident in stating that, if unlawful discrimination did, in fact, motivate defendant's actions, then it may not create a legal safe harbor of sorts for itself by

manufacturing a set of facts which do not fall neatly under a traditional wrongful termination or failure to hire claim. Partly for this reason, this court does not believe that excessive attention should be paid to labeling plaintiffs' claims in the jury instructions in this case. In "thinking out loud" on this issue, this court wonders why it should not simply ask jurors to make separate findings of 1) whether age discrimination was the "but for" cause of plaintiff losing her old job and 2) whether age discrimination was the "but for" cause of plaintiff not being hired for the assistant principal position. These instructions arguably get to the heart of the matter without getting bogged down in labelling issues which seem confusing to both sides and which are likely to be even more so to jurors.

Assuming that something similar to the above jury questions are given at trial, then if jurors agree with defendant that plaintiff lost her job as part of a legitimate reduction in force based on non-discriminatory reasons, then they can answer "no" to the first question. If, however, they agree with plaintiff that the alleged reduction in force was actually a sham designed to deprive her of her job based on age discrimination, then they may answer the first question in the affirmative. Similarly, if jurors agree with defendant that plaintiff did not obtain the assistant principal position simply because she failed to apply for it, then they may answer "no" to the second question. If, however, they agree with plaintiff that defendant's actions, motivated by age discrimination, were the proximate cause of her not applying for the position, and that she would have obtained that position but for age discrimination, then they may answer the second question in the affirmative. The above observations are merely inclinations at this point, but this court's view is that simpler is generally better when dealing with jury instructions, and it requests that the parties keep this in mind when submitting their proposed instructions.

In light of the foregoing, this court concludes that genuine fact issues exist in this case which preclude summary judgment as to plaintiff's age discrimination claim. Defendant's motion for summary judgment will therefore be denied with regard to plaintiff's ADEA claims, but it will be granted as to her Title VII sex discrimination claim.

It is therefore ordered that defendant's motion for summary judgment is granted in part and denied in part.

This, the 10th day of June, 2024.

      /s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI